# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

LEANNE E[1],

            Plaintiff,

    v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

            Defendant.

Case No. 3:22-cv-745-SI

**OPINION AND ORDER**

Kevin Kerr, KERR ROBICHAUX & CARROLL, PO Box 14490, Portland, OR 97293.
Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief,
UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204;
Jeffrey E. Staples, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL,
Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104.
Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

       Plaintiff Leann E. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying Plaintiff's application for Supplemental

Security Income (SSI) under Title XVI of the Social Security Act (Act). For the following

reasons, the Court reverses and remands the decision of the Commissioner.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

## STANDARD OF REVIEW

The decision of the administrative law judge (ALJ) is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1225.

## BACKGROUND

### A.  Plaintiff's Application

This case arises from Plaintiff's third application for benefits under the Act to be decided by the Commissioner. Plaintiff first applied for disability insurance benefits (DIB) on February 27, 2012. AR 91. The application was denied in initial and reconsideration

determinations. Plaintiff filed an application for SSI on December 31, 2012. AR *Id.* Both her

DIB and SSI applications were denied in an ALJ decision issued March 14, 2014. *Id.* A request

for review was denied by the Appeals Council. On March 6, 2015, Plaintiff again filed for DIB

benefits, alleging a disability onset date of March 15, 2014. The claim was denied initially on

April 8, 2015, and upon reconsideration on May 27, 2015. *Id.* On June 30, 2017, ALJ Pines

denied Plaintiff's application for DIB. AR 91-100.

Plaintiff next applied for SSI on May 7, 2019, alleging a disability onset date of May 7,

2019. AR 220. Plaintiff was born on February 29, 1968, and was 51 years old at the time of the

alleged disability onset date. Plaintiff most recently worked as a network engineer for Comcast

Service Center from January 1994, to May 2009. AR 244. The Commissioner initially denied

Plaintiff's SSI claim on December 2, 2019, and upon reconsideration on May 5, 2020. AR 121-

22. Plaintiff requested a hearing before an ALJ. On August 8, 2021, ALJ Sue Liese held a remote

hearing at which Plaintiff testified, along with a vocational expert. AR 10. In a decision dated

June 30, 2021, the ALJ found that Plaintiff was not disabled. AR 56. Plaintiff timely appealed

the ALJ's decision to the Appeals Council, which denied Plaintiff's request for review on

March 25, 2022. AR 5. Thus, the ALJ's decision became the final decision of the Commissioner.

AR 1. Plaintiff now appeals that decision to this Court.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Keyser*, 648 F.3d at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099; *see Bustamante*, 262 F.3d at 954.

## C.  The ALJ's Decision

As a preliminary step, the ALJ concluded that due to material changes, including changes in Social Security Regulations, Plaintiff's age category, and Plaintiff's health conditions, the ALJ need not give effect to the previous ALJ's determinations. AR 42. The ALJ went on to the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of May 7, 2019. AR 45. At step two, the ALJ determined that Plaintiff has the following severe impairments: lumbar degenerative disc

disease, obesity, left shoulder degenerative joint disease, a non-traumatic incomplete tear of the right rotator cuff, depressive schizoaffective disorder of the bipolar type, posttraumatic stress disorder, depression, and borderline personality disorder. *Id.* At step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ next determined Plaintiff's Residual Functional Capacity (RFC) and found that Plaintiff could perform:

> light work as defined in 20 CFR 416.967(b) except the claimant can lift and/or carry 10 pounds frequently and 20 pounds occasionally; she can stand and/or walk for six hours in an eight-hour workday and sit for six hours in an eight hour workday; the individual can occasionally climbing of ramps or stairs and never climb ladders, ropes, or scaffolds; the claimant can occasionally balance, stoop, kneel, crouch and crawl; she can occasionally reach overhead with the left upper, non-dominant extremity and frequently reach in all other directions with the left upper extremity; the individual must avoid exposure to hazards such as unprotected heights and dangerous machinery; the claimant is able to remember, understand, and carry out routine, repetitive tasks or instructions that can be learned within a period of 30 days or by demonstration consistent with occupations of SVP 1 or 2; she can have no public interaction; and the claimant can work in proximity to co-worker but perform no teamwork.

AR 48. Based on these limitations, at step four, the ALJ found that Plaintiff could not perform her past relevant work. AR 55. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, including production worker, electrical accessories assembler, and hand packager. AR 55-56. The ALJ thus concluded that Plaintiff was not disabled. *Id.*

**DISCUSSION**

Plaintiff argues that the ALJ erred by: (A) improperly rejecting Plaintiff's subjective symptom testimony; and (B) improperly rejecting the medical source opinions of Joshua Boyd, Psy. D.; Kay Cogbill, MD; and Heidi Lee, MD.

**A.  Subjective Symptom Testimony**

**1.  Standard**

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character" and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, 2017 WL 5180304, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at 4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency, and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information about the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at 6-7.

The court can uphold the Administrative Law Judge's decision about a claimant's subjective testimony overall, even if it does not uphold all of the ALJ's reasons for discounting the claimant's testimony. *See Batson* 359 F.3d at 1197. The ALJ may not, however, discount

testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2. Analysis

The ALJ found while Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence of record." AR 50. The ALJ found that Plaintiff's activities were inconsistent with her alleged limitations and that the objective medical evidence did not "completely corroborate" Plaintiff's alleged limitations. *Id.* Plaintiff argues that the ALJ used an incorrect legal standard. According to Plaintiff, applying an "*entirely* consistent" standard and requiring the medical evidence to "completely corroborate" alleged limitations is legal error. Plaintiff argues that the regulations merely require that a claimant's asserted limitations "reasonably" be accepted as "consistent" with the record. *See* 20 C.F.R. § 416.929(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."). Although the ALJ did not articulate the standard in an ideal way, the Court finds that the ALJ applied the standard appropriately. The ALJ evaluated whether Plaintiff's alleged symptoms and limitations reasonably could be accepted as consistent with the record.

Plaintiff also argues that none of the reasons the ALJ provided were clear and convincing reasons supported by substantial evidence. The Court thus considers the reasons provided by the ALJ.

### a. Activities of Daily Living

Daily living activities may support discounting subjective symptoms if the Plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills.

*See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities need not amount to full-time work; it is sufficient that the Plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

A claimant, however, need not be incapacitated to receive disability benefits, and completion of certain routine activities is not enough to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled.").

The Ninth Circuit "has repeatedly asserted that the mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see* also *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity conflict with the Plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a way to conclude that a Plaintiff is able to work. *See Garrison*, 759 F.3d at 1017.

Plaintiff testified at the hearing to experiencing severe social isolation, peculiar behaviors, and auditory hallucinations, which she noted were distracting and caused issues with concentration. AR 23, 29. Plaintiff stated that she does not have any friends and finds it difficult to make friends. AR 25-26. Plaintiff also expressed that her back pain restricts her from standing

or sitting for more than half an hour at a time, and it limits her lifting capacity to up to 15 to 20

pounds. AR 30. Finally, because of shoulder pain, Plaintiff reported challenges with reaching.

AR 31.

The ALJ discounted Plaintiff's symptom testimony in part because the ALJ believed that

Plaintiff's activities of daily living "indicate a greater functionality than alleged." AR 52. The

ALJ stated that Plaintiff reported she "helped care for a dog, prepared meals, shopped in stores

by phone, had no problems handling money, socialized with others, had no problems getting

along with others, and was good at getting along with authority figures." AR 50, citing AR 281-

88. In evaluating Plaintiff's purported abilities, the ALJ mischaracterized Plaintiff's Function

Report, the document cited by the ALJ, and ignored other evidence in the record. Plaintiff

reported that she socialized with "others" daily by telephone or computer. AR 285. She did not

identify who these persons were. She stated that she does not go "out" anymore like she used to.

AR 286. Her therapy records are replete with references to the fact that she has no friends and

would like to make friends. Additionally, Plaintiff's medical record and the testimony from her

mother are consistent with her testimony regarding her lack of socialization and isolation at

home. This is consistent with her testimony at the hearing.

In her function report, Plaintiff stated that she only leaves her home to go to the

methadone clinic or to shop and that her mom or sister usually drive her places. AR 284-85. For

meals, she stated she can only make something "quick and easy . . . like sandwiches or frozen

food." AR 283. This is consistent with her testimony at the hearing. Although Plaintiff self-

reported that she had no problems with handling money, other evidence in the record shows that

she required assistance managing financial issues. *See, e.g.*, AR 768. Thus, the ALJ's

characterization of the activities is not supported by substantial evidence in the record.

Further, even if the ALJ had properly characterized Plaintiff's activities, the activities the ALJ identified—caring for a dog, preparing meals, shopping by telephone, and limited socializing—are the sorts of activities the Ninth Circuit has repeatedly explained do *not* conflict with a claimed disability. *See, e.g.*, *Vertigan*, 260 F.3d at 1050 ("[C]ertain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). Other district courts, following the Ninth Circuit's instruction, have found that an ALJ's discounting subjective testimony was erroneous when it relied on a plaintiff's activities much like Plaintiff's activities. *See Chong v. Colvin*, 2013 WL 6633073, at *8 (C.D. Cal. Dec. 16, 2013) (finding that the ALJ erred in discrediting the symptom testimony of a Plaintiff who complained of back and neck pain and who "perform[ed] light housekeeping, prepare[d] meals, and [ran] errands," in addition to "going to the movies"). As a result, the ALJ's reliance on Plaintiff's purported activities are not a clear and convincing reason to discount Plaintiff's testimony.

### b. Objective Medical Evidence

The ALJ found that Plaintiff's "symptoms are not entirely consistent with medical evidence." AR 50. The Commissioner argues that Plaintiff's symptoms were *contradicted* by the objective medical evidence as opposed to not being supported by the objective medical evidence. The Court disagrees. The ALJ did not identified any contradiction, such as Plaintiff claiming she could not lift more than 10 pounds and yet reporting to a medical provider that she had lifted a 50-pound bag of dog food and hurt her shoulder. The ALJ offers a recitation of objective medical findings that the ALJ asserts do not support Plaintiff's limitations.

An ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective testimony just because it was

not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). Because the other reason given by the ALJ was not a clear and convincing reason supported by substantial evidence, the fact that the ALJ found Plaintiff's claimed limitations not supported by the objective medical evidence cannot, standing alone, support discounting Plaintiff's subjective testimony.

**B.  Medical Opinions**

**1.  Standard**

Plaintiff applied for benefits on May 7, 2019. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but determine which are most "persuasive." 20 C.F.R. § 416.920c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. 20 C.F.R. § 416.920c(c)(1). Consistency is determined by how consistent the

opinion is with evidence from other medical and nonmedical sources. 20 C.F.R.

§ 416.920c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking

to factors such as the length of the treatment relationship, the frequency of the claimant's

examinations, the purpose of the treatment relationship, the extent of the treatment relationship,

and whether there is an examining relationship. *Id.* § 416.920c(c)(3). An ALJ is not, however,

required to explain how he or she considered these secondary medical factors, unless he or she

finds that two or more medical opinions about the same issue are equally well-supported and

consistent with the record but not identical. *Id.* §§ 416.920c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the

medical opinions" and "explain how [they] considered the supportability and consistency

factors." 20 C.F.R. § 416.920c(b). The Court is also obliged to maintain its consideration of

whether the analysis provided by the ALJ is supported by substantial evidence. *See* 42 U.S.C.

§ 405(g); *see also Woods*, 32 F.4th at 792 ("Our requirement that ALJs provide 'specific and

legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the

special weight given to such opinions . . . is likewise incompatible with the revised

regulations. . . . Even under the new regulations, an ALJ cannot reject an examining or treating

doctor's opinion as unsupported or inconsistent without providing an explanation supported by

substantial evidence."). When a source provides multiple medical opinions, however, the ALJ

may articulate how he or she considered the medical opinions "from that medical source together

in a single analysis" and is not "not required to articulate how [the ALJ] considered each medical

opinion . . . from one medical source individually." 20 C.F.R. § 416.920c(b)(1).

2. **Analysis**

    a.  **Joshua Boyd, Psy.D., and Kay Cogbill, M.D.**

State agency reviewing consultants Joshua Boyd, Psy.D., and Kay Cogbill, M.D., found that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, and interact appropriately with the public. AR 116-118, 136-38. Based on these moderate limitations, Drs. Boyd and Cogbill concluded that Plaintiff could understand, remember, and carry out "simple routine instruction (1-2 steps)" but that she is "not able to carry out more detailed instructions." *Id.*

Plaintiff asserts that the ALJ erred by not limiting Plaintiff to carrying out only one-to-two step tasks in the RFC. Instead, the ALJ stated that Plaintiff was "able to remember, understand, and carry out routine, repetitive tasks or instructions that can be learned within a period of 30 days or by demonstration consistent with occupations of SVP [Specific Vocational Preparation] 1 or 2." AR 48. Plaintiff contends that the medical source opinions limiting Plaintiff to one-to-two step tasks carry significant weight and are probative. Plaintiff argues that the ALJ was obligated to either accept this limitation or reject it with an explanation supported by substantial evidence, but that she failed to do so. Plaintiff asserts that the ALJ selectively cited instances in the record in which Plaintiff's memory and concentration appeared normal while ignoring contrary evidence of Plaintiff's marked cognitive limitations due to depression and auditory hallucinations. Plaintiff argues that this was harmful error because such a limitation would restrict Plaintiff to jobs requiring only DOT reasoning level 1 under *Rounds v. Commissioner, Social Security Administration*, 807 F.3d 996, 1002-03 (9th Cir. 2015).

The Commissioner responds that the ALJ provided two reasons supported by substantial evidence in generally discounting all the "moderate" limitations found by Drs. Boyd and Cogbill.

The ALJ, however, provided separate reasons for discounting different aspects of the opinions of the state agency doctors, and Plaintiff challenges only the ALJ's discounting of the portion of the opinion relating to Plaintiff's concentration and memory. The first reason given by the ALJ relates to Plaintiff's interactions with others. The ALJ stated that the opinions of Drs. Boyd and Cogbill lacked support because they provided no specific social limitations despite opining that Plaintiff had a moderate limitation in that area of functioning. AR 54. The ALJ criticized Drs. Boyd and Cargill for simply repeating the limitation to carry out simple one-to-two step instructions in addressing Plaintiff's ability to interact with others. *Id.* Plaintiff points out that this is a different functional impairment (interacting with others) that Plaintiff is not challenging. Plaintiff agrees with the ALJ adding a social functioning limitation to the RFC. Plaintiff argues that this basis is irrelevant to and does not undermine Drs. Boyd and Cogbill's opinions that Plaintiff required one-to-two step instructions because of her moderate limitations in understanding, memory, sustained concentration, and persistence. The Court agrees.

Regarding Drs. Boyd and Cogbill's limitations relating to concentration and memory, the ALJ stated that Plaintiff could perform a wider range of unskilled work because of her "relatively normal mental status exam findings as far as concentration, attention, and memory." *Id.* The Commissioner argues that Plaintiff offers only a different interpretation of the record but that the ALJ's interpretation is rational and must be upheld.

The ALJ can consider whether medical opinions are less persuasive when they are unexplained or unsupported by objective findings. 20 C.F.R. § 416.920c(c)(1). The disability determination, however, must also be based on the record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The ALJ error of isolating a specific quantum of evidence in support of a non-disability determination is sometimes referred to as "cherry-picking" the

PAGE 15 – OPINION AND ORDER

evidence. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). The ALJ is not required to discuss each piece of medical evidence. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). But an ALJ must explain why he or she rejects significant probative evidence. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

The ALJ did not identify any specific evidence in discounting the opinions of Drs. Boyd and Cogbill. The ALJ provided a detailed overview of a condensed period of Plaintiff's medical history. The ALJ began four months before Plaintiff's application date. Notably, Plaintiff's mental health records before that date, ignored by the ALJ, show memory and concentration issues. *See, e.g.*, AR 739, 745.

Although the ALJ's recitation of the medical evidence did not specifically identify mental status examinations, the Court is able to discern the ALJ's reasoning as to what medical visits the ALJ found not to support the opinions of Drs. Boyd and Cargill. *See Molina*, 674 F.3d at 1121 ("Even when an agency explains its decision with less than ideal clarity, [the reviewing court] must uphold it if the agency's path may reasonably be discerned." (quotation marks omitted)). The ALJ first relies on an examination from Plaintiff's visit with Alicia Sager, LCSW, QMPH on January 10, 2019. AR 50. The ALJ, however, ignored that Plaintiff presented with "poor personal hygiene/self-care" and was described as "unkept/disheveled." AR 746. Her affect was blunted and restricted, her mood was cooperative but tense, her motor activity was appropriate but tense, her memory was impaired in both recent term and remote, she had auditory hallucinations, and she had normal speech and thought content. Although Plaintiff self-reported that she was "functioning pretty well," in the narration of her visit, Ms. Sager explained that Plaintiff suffers from depression, anxiety, and daily auditory hallucinations that are negative and

sometimes commanding, telling her to kill herself. She reported not being able to remember things. Ms. Sager concluded that Plaintiff needed continuing care to, among other things, "reduce risk of hospitalization." AR 748.

The ALJ also cited a treatment record from March 25, 2019. AR 51. This was a visit between Plaintiff and her mental health treating provider Dr. Heidi Lee, MD. AR 752-53. Plaintiff again self-reported that she was "doing fine." AR 752. Dr. Lee reported, however, that Plaintiff continued to have auditory hallucinations telling her to kill herself, "at times on a daily basis." *Id.* Dr. Lee reported a benign mental status examination, with the exception of auditory hallucinations. AR 753.

The ALJ's narrative discussion of the record to suggest normal concentration and memory included three more encounters with Dr. Lee. AR 53. In all of those encounters, however, Dr. Lee continued to note significant auditory hallucinations. Despite Dr. Lee's mental status examinations revealing instances of intact memory and normal concentration, her overall assessments indicated that Plaintiff's ability to understand, remember, and apply information is limited due to depression and auditory hallucinations. Additionally, Plaintiffs' mental health individual therapy appointments, which the ALJ described as "case management visits," recorded abnormal findings not cited by the ALJ, such as flat affect, limited insight, and hygiene problems. *See, e.g.*, AR 769, 771, 779. They also note a referral to a neurologist for Plaintiff's memory impairment. AR 778. The ALJ stated that "[no] mental status exam findings were reported from these appointments." AR 50. Plaintiff's providers, however, did provide objective evidence relating to her mental status, although not completing a formal mental status examination. It was improper for the ALJ to completely disregard this evidence.

The ALJ focused on the records supporting that Plaintiff could perform a broader range of work and ignored contrary evidence. Such cherry picking is impermissible. Thus, the ALJ's rejection of Drs. Boyd and Cogbill's one-to-two-step limitation was not supported by substantial evidence in the record as a whole.

### b.  Dr. Heidi Lee

Dr. Heidi Lee, MD, treated Plaintiff monthly or every other month for more than two years, documenting recurring auditory hallucinations, depression, anxiety, and social isolation, which interfered with Plaintiff's cognitive function and social interactions. *See, e.g.*, AR 998. Dr. Lee opined that the Plaintiff had marked limitations in understanding, remembering, applying information, interacting with others, concentrating, persisting, and maintaining pace, and adapting or managing herself. AR 999-1000. These marked limitations, according to Dr. Lee, would require unscheduled breaks and potentially lead to 16 hours of absence per month, even from a simple, routine job. *See id.*

The ALJ determined that Dr. Lee's opinion was unpersuasive, concluding that it was not supported by her mental status examinations and "did not cite to a significant amount of evidence on the record to support the findings." AR 53.[2] The ALJ found that Plaintiff's ability to interact was not marked because she interacts with her medical providers and goes to the

---

[2] The Commissioner argues that the ALJ's rejection of Dr. Lee's opinion was proper because Dr. Lee relied on Plaintiff's self-reported auditory hallucinations. The ALJ, however, did not cite this reason. The Commissioner also argues that the ALJ's rejection of Dr. Lee's opinion was proper because Dr. Lee's opinion was contradicted by Plaintiff's activities, specifically that "Plaintiff left her house every day, shopped in stores, and spent time with other people almost daily." The ALJ, however, did not cite this reason, either. The Court must disregard *post hoc* explanations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

methadone clinic. AR 54. The ALJ found that Plaintiff's ability to adapt was not marked because she lives on her own and applied for housing, veterinary, and utility assistance. *Id.*

Plaintiff argues that the ALJ erroneously substituted Dr. Lee's judgment regarding Plaintiff's marked mental limitations with the ALJ's own opinion, citing *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (holding that an ALJ may not make their "own assessment and exploration" as to "claimant's physical condition"). Plaintiff also argues that the ALJ ignored Dr. Lee's opinion regarding Plaintiff's absences, which was uncontradicted and significantly probative.

The Court has already concluded that the ALJ cherry-picked the mental status examinations and other objective evidence in the record. Dr. Lee worked at Sequoia Mental Health Services. That is where Plaintiff had various mental health services, including individual therapy, group therapy, case management, and medication management. The ALJ looked at only four visits with Dr. Lee in concluding that mental status examinations did not support Plaintiff's alleged limitations and Dr. Lee's opined limitations. There were significantly more records from Sequoia Mental Health Services that contained objective findings relating to Plaintiff's mental health status. Thus, this reason to discount Dr. Lee's opinion is not supported by substantial evidence.

The ALJ also erred in concluding that Dr. Lee's opinion was entitled to little weight because she did not "cite" objective medical evidence. The Ninth Circuit has held that an ALJ errs in failing to consider a treating doctor's experience with the claimant and underlying records when evaluating whether there is sufficient evidence to support the doctor's opinion. *Garrison*, 759 F.3d at 1013.

PAGE 19 – OPINION AND ORDER

The Court also finds that substantial evidence does not support the ALJ's specific finding with regards to two marked limitations identified by the ALJ. The ALJ concluded that Plaintiff could not be markedly limited in adapting because she lives on her own and applied for veterinary, utility, and housing assistance. The record suggests, however, that Sequoia Mental Health Services provided help in applying for that assistance and that Plaintiff's family members provide significant help in her living alone. The ALJ did not address that evidence. The ALJ also concluded that Plaintiff could not be markedly limited in interacting with others because she interacts with medical providers. Discounting a treating mental health professional's opinion solely because a patient attends mental health treatment is circular reasoning that substitutes the ALJ's opinion for that of the mental health provider's without support in the record.

The ALJ did not specifically address Dr. Lee's opinion regarding Plaintiff's absences. The Commissioner argues that the ALJ did not need to separately address each aspect of Dr. Lee's opinion. That may be true, but because the Court has rejected the ALJ's two general reasons for discounting Dr. Lee's opinion, there is no reason remaining for discounting Dr. Lee's opinion regarding Plaintiff's absences.

## C.  Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been

improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The Court does not, however, find that the record is free of all conflicts and ambiguities. The Court therefore declines to credit the erroneously rejected statements as true.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 19th day of October, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge